## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TRAVIS HOWARD, VANESSA HOWARD,       )        Case No. 3:19-cv-93
WILLIAM SIMMS, CHARLES NEFF, STACY   )
ADAMS-NEFF, and GWEN SNYDER,         )
*individually and on behalf of all others* )
*similarly situated,*                )
                                     )
                                     )        JUDGE KIM R. GIBSON
            Plaintiffs,              )
      v.                             )
                                     )
LVNV FUNDING, LLC, and RESURGENT     )
CAPITAL SERVICES, LP,                )
                                     )
                                     )
            Defendants.              )

### <u>MEMORANDUM OPINION</u>

Travis Howard and Vanessa Howard, Charles Neff and Stacy Adams-Neff, William Simms, and Gwen Snyder (collectively "Plaintiffs"), debtors who each filed for bankruptcy protection, brought this putative Fair Debt Collection Practices Act ("FDCPA") class action against Defendants LVNV Funding, LLC, and Resurgent Capital Services, LP (collectively "LVNV"). Before the Court are Plaintiffs' Motion to Compel Discovery (ECF No. 39) and LVNV's Motion to Compel Arbitration (ECF No. 41). Plaintiffs move to compel production of information or documents regarding all proofs of claim that LVNV has filed in Chapter 13 bankruptcy proceedings in the Commonwealth of Pennsylvania since June 6, 2018, and to compel the production of purchase agreements for Plaintiffs' accounts. (ECF No. 39) LVNV moves to compel arbitration regarding the claims made by Travis Howard and Vanessa Howard. (ECF No. 41) Both motions are fully briefed (ECF Nos. 40, 42, 43, 44-1, 47, 48, 52-1) and ripe for disposition.

For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion to Compel Discovery and **DENIES** Defendants' Motion to Compel Arbitration.

## I.   Jurisdiction and Venue

This Court has subject-matter jurisdiction because Plaintiffs allege violations of the FDCPA, a federal law.  28 U.S.C. § 1331.  Further, the FDCPA expressly grants district courts jurisdiction over claims alleging violations of its provisions.  15 U.S.C. § 1692k(d).

Venue is proper because a substantial part of the events giving rise to this action occurred in the Western District of Pennsylvania.  28 U.S.C. § 1391.

## II.   Factual Background[1]

### A.   Plaintiffs' Claims

Between March 2018 and March 2019, each Plaintiff filed for protection from creditors under Chapter 13 of the Bankruptcy Code.  (ECF No. 15, ¶ 17)  In each of Plaintiffs' bankruptcy proceedings, LVNV filed a proof of claim[2] to collect a debt Plaintiffs allegedly owe or owed to LVNV.  (*Id.* ¶ 18)  On each proof of claim,[3] LVNV listed the amount of the claim and did not check a box stating that the claim included "interest or other charges."  (*Id.* ¶¶ 19–21)  The

---

[1] For the purpose of deciding the two pending motions, the Court draws the following facts from Plaintiffs' Amended Complaint (ECF No. 15), as well as various documents filed in support of the parties' respective Motions.  (ECF Nos. 39, 40, 41, 42, 43, 44, 47, 48, 52, 55)

[2] A proof of claim is a document filed against a debtor in a bankruptcy proceeding, signaling that a creditor has a claim against the debtor.  The proof of claim tells the bankruptcy trustee about the claim, particularly the amount claimed, so that the bankruptcy trustee can determine whether and what amount to pay the creditor.  If a creditor does not file a proof of claim, it will not get paid for its claim in the bankruptcy process.

[3] LVNV's process for filing the proofs of claim was substantially identical in each case, so the Court will only cite to one instance for the sake of convenience.

proofs of claim listed the entire amount claimed as principal and nothing owed in either interest or fees. (*Id.* ¶¶ 22–23)  The various proofs of claim ranged in value from $309.36 to $1,148.62. (*Id.* ¶¶ 22, 26)

Although the proofs of claim indicated otherwise, the amounts claimed included interest and fees. (*Id.* ¶ 46)  LVNV knew that the amounts included interest and fees because it received records of the debts when it purchased the debts from the original creditors. (*Id.* ¶ 47)  LVNV knowingly filed false proofs of claim against each of the Plaintiffs and filing of false proofs of claim is LVNV's regular practice. (*Id.* ¶¶ 50–51)  After filing a false proof of claim, LVNV either withdraws the claim after the debtor objects, permits the bankruptcy court to disallow the claim by default, or provides correct information after the bankruptcy court orders it to do so. (*Id.* ¶ 52)  These false filings deny debtors information necessary to properly evaluate the proofs of claim. (*Id.* ¶ 56)  By falsely filing proofs of claim , LVNV is saved the expense and burden of correctly stating the value of the proof of claim with separate valuations for principal, interest, and fees. (*Id.* ¶ 64)

**B.  The Discovery Dispute**

On September 23, 2019, Plaintiffs served Interrogatories on LVNV seeking the following: (1) information, including the name, case number, court and court division, creditor, and date of filing, of each proof of claim LVNV filed in any Chapter 13 bankruptcy proceeding in Pennsylvania; (2) whether the proof of claim stated that the amount claimed included interest or other fees; and (3) the amounts of "Principal," "Interest," and "Fees" listed on each proof of

claim.[4]  (ECF No. 39-1 at 9, 17)  The request covered only proofs of claim filed after June 6, 2018. (*Id.* at 8)  LVNV objected to Plaintiffs' requests, arguing that the Interrogatories were "overly broad, unduly burdensome, not proportionate to the needs of [the case, sought] information for an indefinite time period," and contained publicly accessible information just as easily retrieved by Plaintiffs as LVNV.  (ECF No. 39-2 at 3–4)  After several conferrals between the parties, Plaintiffs offered to accept PDF copies of all proofs of claim and determine the information from those copies.  (ECF No. 39-5 at 2)  Plaintiffs filed the Motion to Compel to force LVNV to produce the PDFs requested.  (ECF No. 39 at 4)  Plaintiffs assert that the information is necessary to properly determine the issue of class certification.  (*Id.*)  In the alternative, Plaintiffs have offered to accept the case number, court, and court division of each filing so that they could find the information themselves.  (*Id.*)

In addition to written Interrogatories, Plaintiffs also filed a Request for Production with LVNV, seeking all documents related to Plaintiffs and LVNV's accounts for Plaintiffs, as well as all contracts, agreements, or other documents between LVNV and the Plaintiffs' creditors related to the accounts LVNV bought from those creditors.  (ECF No. 39-1 at 12–13)  In response, LVNV produced bills of sale concerning Plaintiffs and their respective accounts with LVNV; each of these bills of sale referred to an underlying purchase agreement.  (ECF No. 39-6) Plaintiffs requested production of those referenced purchase agreements.  (ECF No. 39-5 at 2–3) As LVNV has not produced those documents, Plaintiffs filed the instant Motion to Compel to force LVNV to produce those purchase agreements.  (ECF No. 39 at 5–6)  Plaintiffs assert that

---

[4] Plaintiffs also sought other discovery material, but the parties have resolved any disputes over those requests.  Only the requests detailed here are in dispute.  (ECF No. 39 at 1)

this information is necessary to determine whether LVNV will be able to produce further relevant information from the creditors whom Plaintiffs initially owed, whether LVNV would have been able to itemize the interest, fees, and charges listed in the proofs of claim, and whether the original creditors made any representations with respect to the composition of the accounts. (*Id.* at 5–6)

### C. The Arbitration Agreement

Vanessa Howard's claim against LVNV arises from a debt she originally owed Credit One Bank, N.A ("Credit One").  (ECF Nos. 15 ¶ 19; 41 at 2)  Credit One has a Cardholder Agreement which governs the terms of the contract between a cardholder, like Vanessa Howard, and itself.  (ECF Nos. 41 at 2; 41-3)  The Cardholder Agreement requires the use of arbitration ("Arbitration Agreement") to resolve disputes, and provides that either party "may, without the other's consent, require that any controversy or dispute" between the parties "be submitted to mandatory, binding arbitration."  (ECF No. 41-3 at 7–8)  The Arbitration Agreement purports to apply to "any other matters relating to [Vanessa Howard's] account," as well as all of Credit One's successors and assigns.  (*Id.* at 2, 8)  This Arbitration Agreement includes not only any claims made directly by Vanessa Howard, but also those "made by anyone connected with [Vanessa Howard] or claiming through" her.  (*Id.* at 8)

### III. Procedural Background

Plaintiffs filed the Complaint on June 6, 2019.  (ECF No. 1)  LVNV was served on July 3, 2019.  (ECF No. 5)  The parties filed a stipulation for an extension of time for LVNV to answer the complaint on July 23, 2019.  (ECF No. 11)  LVNV moved to dismiss for failure to state a claim on August 5, 2019.  (ECF No. 12)  Plaintiffs then filed the Amended Complaint on August

26, 2019, mooting LVNV's motion to dismiss.  (ECF Nos. 15; 16)  The Amended Complaint alleged that LVNV violated the FDCPA's prohibitions on making false or misleading representations in collecting debts in violation of 15 U.S.C. § 1692e, as well as the FDCPA's bar on using unfair or unconscionable debt collection practices in violation of 15 U.S.C. § 1692f. (ECF No. 15, ¶¶ 76–80)

The parties conducted a Federal Rule of Civil Procedure 26(f) Conference on August 14, 2019, (ECF No. 17 at 2) and filed a report on the conference on September 4, 2019 (ECF No. 17). LVNV filed a Motion to Dismiss both claims in the Amended Complaint for failure to state a claim on September 10, 2019.  (ECF No. 20.)  The Court held a Pretrial Conference on September 12, 2019, in which counsel for both parties participated.  (ECF No. 22)  Prior to the conference, the parties submitted a Stipulation Selecting ADR Process (ECF No. 18) and a Proposed Initial Scheduling Order.  (ECF No. 19)  The Court entered an Initial Scheduling Order (ECF No. 23) and an Order Referring Case to Alternative Dispute Resolution (ECF No. 24) on the same day as the Pretrial Conference.  The parties filed a proposed Stipulated Protective Order on November 6, 2019, which the Court ordered.  (ECF Nos. 27, 30)  The parties filed a Joint Motion to Extend Time for Mediation on November 8, 2019 (ECF No. 28), which the Court granted (ECF No. 29).

In a Memorandum Opinion and Order dated February 28, 2020, the Court granted in part and denied in part LVNV's Motion to Dismiss, dismissing Plaintiffs' § 1692f claims with prejudice.  (ECF No. 31)  On March 6, 2020, the parties filed a Joint Motion to Extend Discovery Deadlines (ECF No. 32), which the Court granted (ECF No. 33).  On March 13, 2020, LVNV answered the complaint.  (ECF Nos. 34, 35)  Paragraph 17 in the section titled "Affirmative Defenses" stated:

> To the extent Plaintiffs' respective agreements with the original creditor contains an arbitration provision, LVNV demands that this matter be stayed, and that Plaintiffs pursue their individual claims against LVNV in arbitration per the terms of the credit agreement. Therefore, Plaintiffs lack standing to bring this action in this forum. LVNV affirmatively asserts its right to compel individual arbitration of Plaintiffs' claims. Plaintiff should dismiss this action and proceed in arbitration against LVNV.

(ECF Nos. 34 at 19–20; 35 at 17)   The Answers to the Complaint[5] did not include disclosure statements, and, after being notified that they were absent by the District Clerk's Office and directed to file the required disclosures within seven days, LVNV filed the disclosure statements.  (ECF Nos. 36, 37)

On May 6, 2020, Plaintiffs filed a Motion to Compel Discovery seeking an order from the Court directing LVNV to produce discovery related to both class certification and the Plaintiffs' individual cases against LVNV.  (ECF No. 39)  Plaintiffs seek an order from the Court directing LVNV to produce the following: (1) PDF records of each proof of claim LVNV filed in the Commonwealth of Pennsylvania since June 6, 2018; and (2) purchase agreements referenced in bills of sale connected to LVNV's purchase of Plaintiffs' debts.  (*Id.* at 5–6)  LVNV filed a Response in Opposition on May 20, 2020, and Plaintiffs sought leave to file a Reply, on May 26, 2020, which the Court granted.  (ECF Nos. 43, 44, 45)  Also on May 20, 2020, LVNV filed a Motion to Compel Arbitration, asking the Court to order that Travis and Vanessa Howards' claims be resolved through arbitration, and to dismiss or stay the entire case pending resolution of the arbitration.  (ECF No. 41)  Plaintiffs filed a Response in Opposition on June 1, 2020, and

---

[5] The Defendants, LVNV Funding and Resurgent Capital Services, filed separate answers to the complaint.  (ECF Nos. 34, 35)

LVNV sought leave of the Court to file a Reply on June 11, 2020, which the Court granted.  (ECF Nos. 47, 52, 53)  The Court heard oral argument on both Motions on June 12, 2020.  (ECF No. 54)

## IV. Motion to Compel Discovery

### A. Legal Standard

Federal Rule of Civil Procedure 26 provides the general framework for discovery in federal civil litigation.  Parties may obtain discovery of any matter that is both nonprivileged and relevant to a party's claim or defense, so long as it is "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  In determining whether discovery is proportional to the needs of the case, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(l).

Rule 37 provides the mechanism to compel discovery from a person or party who refuses to provide discovery.  *See* Fed. R. Civ. P. 37.  The party moving to compel discovery under Rule 37 bears the initial burden of proving the relevance of the material requested.  *See Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001) (citations omitted).  If the movant meets this initial burden, the burden shifts to the person resisting discovery to establish that discovery of the material requested is inappropriate.  *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (citation omitted).  The party resisting discovery must explain with specificity why discovery is inappropriate; a simple response that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient.  *See Josephs v. Harris Corp.*, 677 F.2d 985, 991–92 (3d Cir. 1982).

### B.  Discussion

#### 1.   Request for Production of Proofs of Claim

##### (a)  The Parties' Arguments

Plaintiffs filed the Motion to Compel to force LVNV to produce the PDF copies of all proofs of claim. (ECF No. 39 at 4)  Plaintiffs assert that the information is necessary to properly determine the issue of class certification.  (*Id.*)  In particular, Plaintiffs contend that the information "is relevant in determining the size of the class Plaintiffs may seek to certify, what types of consumers may be part of that class, and other aspects of class certification, including numerosity, commonality, typicality, and predominance." (ECF No. 40 at 5)  In the alternative, Plaintiffs offered to accept the case number, court, and court division of each filing so that they could find the information themselves. (*Id.*)

LVNV contends that the requested information is not relevant to establishing any of the elements for class certification, that the requests are overbroad, the request is unduly burdensome, and that Plaintiffs' counsel may use the requested information "as a marketing tool" to identify potential new clients. (ECF No. 43 at 4–11)

##### (b)  The Court Grants Plaintiffs' Motion to Compel the Requested Information Regarding the Proofs of Claim

Courts have reached different conclusions regarding the extent to which pre-certification discovery of the identify of potential class members is proper. *Burkhart-Deal v. Citifinancial, Inc.,* No. 8-1289, 2009 WL 1750915, at \*3 (W.D. Pa. June 19, 2009); *compare Artis v. Deere & Co.,* 276 F.R.D. 348, 352 (N.D. Cal. 2011) ("The disclosure of names, addresses, and telephone numbers is a common practice in the class action context."), *and Kane v. Nat'l Action Fin. Servs., Inc.,* No. CIV.A. 11-11505, 2012 WL 1658643, at \*1 (E.D. Mich. May 11, 2012), *with Enslin v. Coca-Cola Co.,*

No. 2:14-CV-06476, 2016 WL 7013508, at *2 (E.D. Pa. May 13, 2016) (stating that "[t]he names and addresses of class members are not, per se, within the scope of legitimate discovery" (citation omitted)), *and* McLaughlin on Class Actions § 11:1 (17th ed.) (stating "courts ordinarily will not permit putative class counsel to obtain discovery of class members' identities at the precertification stage").  Despite these seemingly different approaches, "the guiding principles to be drawn from the relevant authority are not bright-line rules, but concepts that rest on the basic purposes and underlying rules of civil discovery, and that allow some degree of sensitivity to the facts and the parties before the Court."  2009 WL 1750915, at *3.

The Court finds that the requested discovery will reasonably assist the Plaintiffs in their attempt to meet the requirements of class certification in this case.  The proofs of claim are reasonably calculated to lead to the discovery of admissible evidence regarding commonality, typicality, and numerosity of the proposed class.  As Plaintiffs explained, the proofs of claim will help them:

> identify the number of individuals who had proofs of claim filed in a bankruptcy case where interest and fees were not itemized on a credit card account and to assess whether certain characteristics of the proofs, like the accounting practices unique to each original creditor who sold the accounts to Defendants, makes some claims atypical such that subclasses are necessary to account for their differences.

(ECF No. 44-1 at 3)  Importantly, Plaintiffs do not seek the proofs of claim for the purpose of obtaining the "names and addresses of class members," but rather because the information contained in the proofs of claim is relevant to class certification.  It is the information in the proofs of claim that Plaintiffs seek, not names and addressees of potential class members.  Thus, Plaintiffs are not merely seeking the identities of potential class members but are seeking other

information that is relevant for class certification that reasonably requires also disclosing the identifies of potential class members. Although discovery for the sole purpose of obtaining the names and addresses of potential class members would not be proper at this stage, the names and addresses of potential class members is proper where, as here, there is another permissible purpose for such discovery.

The Court finds LVNV's objections to providing the requested discovery unavailing. LVNV's concern about the information being used as a "marketing tool" is not a significant concern given that the proofs of claim are publicly available information. (ECF No. 44-1 at 5 n.1) In addition, LVNV's claim that this request would be unduly burdensome is not supported by any evidence concerning the time or expense necessary to comply with this discovery request in order to allow the Court to evaluate whether compliance would be unduly burdensome. *See Carusone v. Kane*, No. 1:16-CV-1944, 2019 WL 5424333, at *2 (M.D. Pa. Oct. 23, 2019). Further, Plaintiffs have attempted to minimize the burden on LVNV by narrowing their request to just PDFs of the proofs of claim and have alternatively offered to track down the proofs of claim themselves if LVNV would provide the case number, court, and court division of each filing.

Therefore, the Court grants Plaintiffs' motion to compel the requested information. Because Plaintiffs are willing to accept the requested information in different formats to reduce the burden on LVNV, the Court will permit LVNV to choose among several options for complying with the Court's Order to produce the requested information: (1) produce PDF versions of all proofs of claim Defendants filed in Pennsylvania from June 6, 2018, to present; (2) produce PDF versions of all proofs of claim Defendants filed in Pennsylvania from June 6, 2018,

to present in which interest and fees were not itemized in the proof of claim; (3) provide the case number, court, and court division of each filing of a proof of claim Defendants filed in Pennsylvania from June 6, 2018, to present; or (4) provide the case number, court, and court division of each filing of a proof of claim Defendants filed in Pennsylvania from June 6, 2018, to present in which interest and fees were not itemized in the proof of claim. LVNV shall have ten days from the date of this Order to select one of these options for complying with the Court's Order, and shall file notice informing the Court and Plaintiffs of its selection.

### 2. Request for Production of Purchase Agreements

#### (a) The Parties' Arguments

The Plaintiffs contend that the purchase agreements referenced in the bills of sale previously provided in discovery are relevant because they are "necessary to understand what information was transferred with respect to Plaintiffs' accounts and what information or documents Defendants could obtain during the purchase process with respect to the accounts." (ECF No. 44-1 at 6)  Further, Plaintiffs contend that the documents are relevant because they will show if Defendants had or could obtain information regarding the principal and interest on the accounts at issue and what representations the original creditors made with respect to the composition of the accounts at issue. (ECF No. 40 at 7–8)

LVNV contends that the purchase agreements should not be ordered produced because they contain "highly confidential information related to the relationship between the purchaser of the receivable and the creditor," are irrelevant because they "contain no account-specific information," and are irrelevant to the issue of class certification. (ECF No. 43 at 11–12)  In addition, the purchase agreements would not lead to any additional account-related documents

because "other than what Defendants have already produced to Plaintiffs in this matter, . . . there are no account-level documents in Defendants' possession." (ECF No. 43 at 13)

### (b) The Court Denies Plaintiffs' Motion to Produce the Requested Purchase Agreements

The Court denies Plaintiffs' motion to produce the requested purchase agreements. Plaintiffs have not shown that the purchase agreements are relevant with regard to class certification. LVNV has turned over all documentation they received from Plaintiffs' creditors related to the Plaintiffs' accounts. (ECF No. 55 at 23:9–23:19) Plaintiffs contend that the purchase agreements may contain language regarding LVNV's ability to request additional documentation from the original creditors. (ECF No. 55 at 24:1–24:19) But whether LVNV could have requested additional information from the original creditors is not relevant to the issue of class certification. Plaintiffs admit that "the only reason [they] wanted to look at those purchase and sale agreements was to see if there was another source through which [they could] try to prove [their] individual clients' claims." (ECF No. 55 at 24:2–24:8) And, they admit that seeking these documents is "really more of an individual issue" for four of the named Plaintiffs to "determine if [they] can get more information with regard to their claims or if [they] have to rely on . . . their individual testimony to prove their claims. (ECF No. 55 at 8:22–9:5) Therefore, at this time, the purchase agreements are not relevant.

### V. Motion to Compel Arbitration

LVNV moves to compel Vanessa Howard and Travis Howard to submit their claims to arbitration based on the Cardholder Agreement requiring that "any controversy or dispute" between the parties "be submitted to mandatory, binding arbitration." (ECF No. 41-3 at 7–8)

(ECF No. 41)  As a threshold matter, Plaintiffs contend that LVNV has waived any right to compel arbitration.[6]  (ECF No. 47 at 10–15)

## A.  Legal Standard

Arbitration agreements are enforceable to the same extent as other contracts.  *Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004).  "A court may, however, refuse to enforce an arbitration agreement where a 'party has acted inconsistently with the right to arbitrate."  *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 117 (3d Cir. 2012) (quoting *Nino*, 61 F.3d at 208).  Nevertheless, there is a "strong preference for arbitration in federal courts" and "waiver is not to be lightly inferred."  *Nino*, 609 F.3d at 208 (quoting *PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068–69 (3d Cir. 1995)).  "[W]aiver will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery.'"  *PaineWebber*, 61 F.3d at 1068–69 (citation and internal quotation marks omitted).  But courts "will not hesitate to hold that the right to arbitrate has been waived where a sufficient showing of prejudice has been made by the party seeking to avoid arbitration."  *Pharmacy Ben. Managers*, 700 F.3d 109, 117 (3d Cir. 2012) (quoting *Nino*, 61 F.3d at 208).  "'[P]rejudice is the touchstone for determining whether the right to arbitrate has been waived' by litigation conduct."  *Zimmer v. Cooper*, 523 F.3d 224, 231 (3d Cir. 2008) (quoting *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 221 (3d Cir. 2007)).  Six nonexclusive factors guide the prejudice inquiry:

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims;

---

[6] Because the Court finds that LVNV waived any right to compel arbitration, the Court does not consider the applicability of the Arbitration Agreement to the Howards' claims.

(3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

*Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011) (citing *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 926–27 (3d Cir. 1992)).  These *Hoxworth* factors are generally indicative of whether the party opposing arbitration would suffer prejudice due to the other party's delay in seeking arbitration.  *Id.*  The factors need not all be present to justify a finding of waiver; instead, "the waiver determination must be based on the circumstances and context of the particular case."  *Nino*, 609 F.3d at 209.

### B.  The Parties' Arguments

Plaintiffs contend that LVNV waived any right to compel arbitration by acting inconsistently with the right to arbitrate.  (ECF No. 47 at 10–15)  They argue that the *Hoxworth* factors weigh in favor of finding waiver because: (1)  LVNV waited eleven months before moving to compel arbitration; (2) there were extensive litigation activities prior to LVNV moving to compel arbitration, including the Court dismissing one of Plaintiffs' claims with prejudice; and (3) there was extensive discovery conducted prior to LVNV moving to compel arbitration.  (*Id.*)

LVNV argues that it did not waive its right to enforce the arbitration agreement because the Plaintiffs have not been prejudiced by any delay in seeking to enforce the arbitration agreement.  (ECF No. 52-1 at 2–5)  LVNV contends that Plaintiffs have not been prejudiced because the discovery that has been conducted so far has been limited to the issue of class certification so has not been extensive.  (ECF No. 52-1 at 3)

**C.  The Court Denies LVNV's Motion to Compel Arbitration Because LVNV has Waived the Right to Compel Arbitration**

The Court holds that LVNV has waived any right to compel Vanessa Howard and Travis Howard to submit their claims to arbitration because, under the *Hoxworth* factors, LVNV has acted inconsistently with the right to arbitrate, resulting in prejudice to Plaintiffs.

**1.  Timeliness of the Motion to Arbitrate**

The first *Hoxworth* factor is the timeliness of the motion to arbitrate.  *Pharmacy Ben. Managers*, 700 F.3d at 118.  The Complaint was filed on June 6, 2019, and LVNV was served with the complaint on July 3, 2019.  LVNV moved to compel arbitration on May 20, 2020.  Thus, there was an over ten-month delay between LVNV being served the Complaint and LVNV moving to compel arbitration.  In analyzing this factor, the Third Circuit has stated that:

> [a] ten month delay is significantly longer than the cases in which we have found no waiver, *see Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 598 (3d Cir.2004) (38 days); *PaineWebber*, 61 F.3d at 1069 (two months); *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 680 (3d Cir.2000) (one-and-a-half months); *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777, 783–84 (3d Cir.1975) (arbitration motion made "immediately" after removing case to federal court), and sits at the low end of the cases in which we have found waiver, *see Gray Holdco*, 654 F.3d at 454 (ten months); *Hoxworth*, 980 F.2d at 925 (11 months); *Nino*, 609 F.3d at 210 (15 months); *Ehleiter*, 482 F.3d at 223 (4 years).

*Pharmacy Ben. Managers*, 700 F.3d at 118.  In *Pharmacy Benefit Managers*, after summarizing the prior decisions, the Third Circuit found waiver where the delay was slightly over ten months. *Id.* at 122.  The Third Circuit has also described a fifteen-month delay between being served the complaint and filing a motion to compel arbitration "significant."  *Nino*, 609 F.3d at 210.

In evaluating the length of delay, courts also consider the reasons given for the delay. *See Pharmacy Ben. Managers*, 700 F.3d at 118; *Gray Holdco*, 654 F.3d at 455.  A fifteen month delay,

combined with unpersuasive explanations for the delay, was found to "weigh[] heavily in favor of finding waiver." *Nino*, 609 F.3d at 210. In *Gray Holdco*, the Third Circuit found that a ten-month delay without explanation "weigh[ed] in favor of finding waiver." 654 F.3d at 455.

LVNV does not provide any explanation for why it waited over ten months to move to compel arbitration. Rather, LVNV focuses on the length of time only being sixty-eight days between filing their Answers to the Complaint in which they claim they provided notice of their intent to arbitrate and filing the motion to compel arbitration. (ECF No. 52-1 at 2–3) But the relevant Third Circuit cases evaluate the timeliness of the motion to compel in relation to the date the complaint was filed or the date the complaint was served, not the date the answer was filed.[7] *See, e.g., Gray Holdco*, 654 F.3d at 455 (describing the first factor as "the length of time between when a party initiates or *first participates* in litigation and when it seeks to enforce an arbitration clause" (emphasis added)).

Further, there is no reason why LVNV had to wait until after resolution of the motion to dismiss to file their motion to compel arbitration because there is "no rule precluding a party of simultaneously traveling on both procedural avenues." *Gray Holdco*, 654 F.3d at 454. In addition, LVNV provides no explanation for why it waited sixty-eight days after filing their answers in which they asserted their right to compel arbitration to file the motion to compel

---

[7] In the case relied on by LVNV to argue that the date of the answer is relevant, *Comrey v. Discovery Financial Services, Inc.*, 806 F. Supp. 2d 778 (M.D. Pa. 2011), the plaintiff filed a complaint in state court in October 2011, the defendant then removed the case to federal court, answered the complaint, and, fifty one days after filing the answer, filed a motion to compel arbitration on January 19, 2011. 806 F. Supp. 2d at 781–82. In that case, the court considered the length of time between filing the answer and the motion to compel arbitration and that the answer gave notice that the defendant was going to seek to compel arbitration in finding that there was no waiver. *Id.* at 785. Importantly, the time between the complaint being filed in state court and the defendant filing the motion to compel arbitration was less than four months, in line with cases finding no waiver and significantly shorter than the over ten months present here.

arbitration.  *Cf. Nino*, 609 F.3d at 210 (noting, in finding that the defendant's explanation for delay in filing a motion to compel arbitration was unpersuasive, that the defendant "still did not move to enforce the arbitration agreement for another two months" after allegedly becoming aware of the existence of the arbitration agreement).  Finally, LVNV's emphasis on its answer asserting the arbitration agreement as a defense is misplaced given that the arbitration paragraph was a boilerplate provision—among twenty-two other boilerplate affirmative defenses—that did not affirmatively assert the existence of an arbitration agreement regarding the Howards.  Therefore, the first factor weighs heavily in favor of finding waiver.

### 2. Extent to Which the Party Seeking Arbitration has Contested the Merits of Opposing Party's Claims

The second factor is the extent to which the party seeking arbitration has contested the merits of the opposing party's claims.  *Gray Holdco*, 654 F.3d at 455–56.  LVNV filed two motions to dismiss for failure to state a claim.  (ECF Nos. 12, 20)  The first was denied as moot after Plaintiffs amended their Complaint and the second was granted in part and denied in part, with the Court dismissing Plaintiffs' § 1692f claims with prejudice.  (ECF No. 31)

In *Pharmacy Benefit Managers*, the Third Circuit found that this factor weighed in favor of finding waiver where the defendant filed a motion to dismiss, then filed a motion for reconsideration after the motion to dismiss was denied.  700 F.3d at 118.  The Third Circuit noted that the motion to dismiss "raised issues outside of the scope of the pleadings" and was "supported . . . with a binder of materials and studies."  *Id.*  The Third Circuit found:

> This is significantly more activity on the merits than in cases in which we found no waiver, *see Palcko*, 372 F.3d at 598 (motion to dismiss but only for insufficient service of process); *PaineWebber*, 61 F.3d at 1069 (no briefing on the merits); Wood, 207 F.3d at 680 (a motion to dismiss); *Gavlik*, 526 F.2d at 783–84 (no

> contest on the merits), and appears to be at least comparable to (or stronger than)
> the cases in which we have found waiver, *see Nino*, 609 F.3d at 210–11 (no
> motions on the merits); *Ehleiter*, 482 F.3d at 223 (motion for summary judgment);
> *Hoxworth*, 980 F.2d at 925–26 (motion to dismiss for failure to state a claim, and
> opposition to motion for class certification); *Gray Holdco*, 654 F.3d at 456 (motion
> for preliminary injunction with evidentiary hearing, and opposition to motions
> to dismiss). This factor thus weighs in favor of finding waiver.

*Id.*

Just as in *Pharmacy Benefit Managers,* the Court finds that this factor weighs in favor of

finding waiver.  Although the motion to dismiss did not raise issues outside the scope of the

pleadings, LVNV has not provided an explanation for waiting until after this motion was

resolved to file its motion to compel arbitration.  Waiting to see if its motion to dismiss all the

claims by all the plaintiffs in one fell swoop before moving-on to a piecemeal approach is a

classic example of a party "us[ing] the federal court proceedings to test the water before taking

a swim."  *Id.* at 122 (quoting *Gray Holdco*, 654 F.3d at 453); *see also Forby v. One Techs., L.P.*, 909

F.3d 780, 785 (5th Cir. 2018) (stating that "[a] party does not get to learn that the district court is

not receptive to its arguments and then be allowed a second bite at the apple through

arbitration" (citation and internal quotation marks omitted)).  LVNV acted inconsistently with

its right to arbitrate by moving to dismiss the complaint without mentioning arbitration, and

waiting until after the motion was resolved to first raise arbitration.  *See Tae In Kim v. Dongbu*

*Tour & Travel, Inc.*, 529 F. App'x 229, 235 (3d Cir. 2013) (stating that moving to dismiss the

complaint without mentioning arbitration is "a step that sometimes in itself indicated that if the

moving party had a right to have a dispute submitted to arbitration it has waived that right").

Further, Plaintiffs are prejudiced by LVNV waiting until after the resolution of the motion to

dismiss to seek arbitration because Plaintiffs spent time and incurred expenses in defending

against the motion, one of Plaintiffs' claims was dismissed with prejudice, and LVNV will be able to re-litigate the same issues before the arbitrator after first testing them out in federal court. *See Pharmacy Ben. Managers*, 700 F.3d at 122. Therefore, this factor weighs heavily in favor of finding waiver.

### 3.   Whether the Party Seeking Arbitration Informed the Other Party of its Intent

The third factor is whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings. *Hoxworth*, 980 F.2d at 926–27. LVNV first referenced arbitration in their Answers, sixty-eight days prior to filing their motion to compel arbitration and approximately nine months after the Complaint was filed. (ECF Nos. 34, 35) However, the Answers only include boilerplate language about arbitration as an affirmative defense, and merely state that if there is an arbitration provision, then they assert their right to compel arbitration. (ECF Nos. 34; 35) The Answers do not affirmatively state that there is an arbitration agreement, let alone that there was an arbitration agreement applicable to the Howards. In addition, the Answers were filed after the motion to dismiss was resolved and over eight months after LVNV was served with the Complaint. After the Answers were filed, LVNV appears to have first raised the issue of arbitration specifically with respect to Vanessa Howard, but not Travis Howard, in an email on April 9, 2020. (ECF No. 48-10 at 12) But, rather than demanding arbitration, LVNV simply asked Plaintiffs' counsel about whether they would be "agreeable to transferring Mrs. Howard's claims to arbitration considering the arbitration provision in the credit agreement." (*Id.*) This statement is far from a demand for arbitration. Therefore, this factor weighs slightly in favor of waiver or is, at best, neutral.

### 4.   The Extent to Which the Parties Engaged in Non-Merits Motion Practice

The fourth *Hoxworth* factor is the extent to which the party seeking arbitration engaged in non-merits motion practice. *Pharmacy Ben. Managers*, 700 F.3d at 119. Where there has not been significant non-merits motion practice, this factor weighs against finding waiver. *Gray Holdco*, 654 F.3d at 459.

In *Hoxworth*, the Third Circuit found waiver where the party seeking arbitration filed a motion to disqualify counsel, filed a motion to stay discovery, and opposed motions to compel discovery. 980 F.3d at 925–26. In *Nino*, the Third Circuit found this factor weighed strongly in favor of waiver where, prior to the motion to compel arbitration, the party seeking arbitration "'inadequately answered [Nino's] discovery requests' requiring Nino to file three detailed motions to compel, which [the party seeking arbitration] opposed" and "the consequence of the parties' motion practice over these discovery disputes was to require Nino to 'devote[] substantial amounts of time, effort, and money in prosecuting the action.'" *Nino*, 609 F.3d at 212 (quoting *Hoxworth*, 980 F.2d at 925–26). In *Pharmacy Benefit Managers*, the Third Circuit found that this factor weighed slightly in favor of waiver or was at best neutral where most of the non-merits motion practice dealt with administrative and scheduling motions that were not contested, such as motions for admission pro hac vice, for leave to file a reply brief, and to continue the pretrial conference. 700 F.3d at 119. In addition, there was a motion for certification of an interlocutory appeal which the Third Circuit noted likely would not have been available in arbitration. *Id.* The Third Circuit concluded that the non-merits motion practice was stronger than in cases where the court had previously found no waiver, but was at the low end of circumstances in which the court had previously found waiver. *Id.* (collecting

cases).  In addition, the court noted that this factor is not a requirement and waiver had been found despite no significant non-merits motion practice.  *Id.*

Here, the parties:  filed a joint motion to extend time for mediation (ECF No. 28), sought a stipulated protective order (ECF No. 27), and filed a joint motion to extend time to complete discovery (ECF No. 32).  Plaintiffs' filed the Motion to Compel Discovery, which LVNV did not respond to until after filing the Motion to Compel Arbitration.  However, there is no indication in any of the non-merits motion practice to suggest that these motions would not have been filed, or that they would have substantively been different, if the Howards were not among the Plaintiffs.

The Court finds that this factor weighs slightly in favor of waiver.  As in *Pharmacy Benefit Managers*, most of the motions were administrative and not contested, but Plaintiffs also filed a motion to compel discovery prior to LVNV moving to compel arbitration.  However, because this motion was not specific to the Howards' claims it and it likely would have been filed even if the Howards were not in the case, the Court find that this motion weighs only slightly in favor of waiver.

### 5.   The Party's Acquiescence to the Court's Pretrial Orders

The fifth *Hoxworth* factor is the party seeking arbitration's acquiescence to a court's pretrial orders.  *Gray Holdco*, 654 F.3d at 451.  In looking at acquiescence, the court is looking at whether a party seeking arbitration objected to the court's orders because the party, by assenting to the court's orders, has "acted inconsistently with an intent to arbitrate."  *Gray Holdco*, 654 F.3d at 460; *see Pharmacy Ben. Managers*, 700 F.3d at 119; *Nino*, 609 F.3d at 212.  In considering this factor, the Third Circuit has considered a party's compliance with any court

order in the case, including:   attending hearings, participating in hearings, complying with orders setting a pretrial conference, instructing the parties to submit a discovery plan and a proposed case management order, attending status conferences, filing a Rule 26(f) discovery report, attending court-ordered mediation, establishing discovery deadlines, and requesting extensions of discovery deadlines. *See Gray Holdco*, 654 F.3d at 459; *Pharmacy Ben. Managers*, 700 F.3d at 119-20.

Here, the parties conducted a Rule 26(f) conference and filed a Rule 26(f) report, ADR stipulation, and proposed scheduling order.  (ECF Nos. 17, 18, 19)  The Court held a Rule 16 conference.  (ECF No. 22)  The parties had an initial call with the mediator.  (ECF No. 48 at 2)  The parties jointly sought extensions of deadlines.  (ECF Nos. 28, 36)  LVNV filed two motions to dismiss, the parties exchanged initial disclosures, the parties filed a stipulated protective order, LVNV served Plaintiffs with interrogatories and requests for production, and the parties met to confer regarding a discovery dispute.  (ECF No. 48 at 1–4)  All of these events occurred before LVNV moved to compel arbitration.  *See Nino*, 609 F.3d at 212–13 (distinguishing between complying with court orders while a motion to compel arbitration is pending with the court and complying with court orders before filing a motion to compel arbitration).  LVNV "did not even mention the prospect of arbitration at any of these conferences, nor did it object to any of the [Court's] pretrial orders based upon its intent to compel arbitration."  *Nino*, 609 F.3d at 212.  The Third Circuit has found that participating in ten pretrial conferences over the course of fifteen months and "participat[ing] actively in the litigation for well over a year before moving to compel arbitration" weighed heavily in favor of finding waiver.  *Nino*, 609 F.3d at 212-13.

With regard to acquiescence to pretrial orders, this case falls somewhere between *Pharmacy Benefit Managers* and *Gray Holdco*.  In *Gray Holdco*, the party seeking arbitration:  (1) participated in three pretrial conferences, (2) engaged in court-ordered mediation; and (3) filed a Rule 26(f) discovery report.  *Gray Holdco*, 654 F.3d at 460.  In *Pharmacy Benefits Manager*, the party seeking arbitration:  (1) attended and participated in hearings on the motion to dismiss and motion for reconsideration; (2) the court entered orders setting dates for the pretrial conference and instructing the parties to submit discovery plan and proposed case management order.  In *Gray Holdco*, the Third Circuit found this factor weigh[ed] heavily in favor" of waiver. 654 F.3d at 460.  In *Pharmacy Benefit Managers*, the Third Circuit found that this factor "weigh[ed] somewhat in favor of waiver." 700 F.3d at 120.  Accordingly, the Court finds that this factor weighs in favor of waiver—more than slightly in favor, but less than heavily in favor.

### 6.  The Extent to Which the Parties have Engaged in Discovery

The sixth *Hoxworth* factor is the extent to which the parties have engaged in discovery. *Gray Holdco*, 654 F.3d at 460.  This factor focuses on "the amount and scope of discovery in which the parties engaged prior to the request for arbitration."  *Id.*

Plaintiffs contend that this factor favors them because they engaged in "extensive discovery" prior to LVNV filing its motion to compel.  (ECF No. 47 at 13)  They argue that there has been significant discovery activity, as evidenced the filing of a motion to compel discovery prior to the motion to compel arbitration being filed.  (ECF No. 47 at 13–14)  LVNV counters that this factor favors them because there has not been substantial discovery in this case, since the only discovery that has been conducted to date has been discovery regarding class certification which would have been conducted without the Howards.  (ECF No. 52-1 at 3)

The parties conducted a Rule 26(f) conference, created a proposed case management plan, submitted a Rule 26(f) Report, and submitted a proposed scheduling order. (ECF Nos. 17; 18; 19; 47 at 8)  The parties moved to extend the time to complete discovery. (ECF No. 32)  The parties exchanged initial disclosures. (ECF Nos. 48 at 2; 48-5; 48-6)  LVNV responded to Plaintiffs' interrogatories, requests for production of documents, and requests for admission. (ECF Nos. 48-1; 48-2; 48-3)  LVNV served a discovery request on Plaintiffs, which Plaintiffs answered. (ECF Nos. 48-7; 48-8)  Plaintiffs served LVNV with a deficiency letter concerning their responses to Plaintiffs' discovery requests. (ECF No. 48-9)  The parties met and conferred about the discovery disputes. (ECF No. 48-10)

The Court concludes that this factor weighs slightly in favor of LVNV.  In evaluating this factor, courts look at whether the party seeking arbitration "use[d] the Federal Rules to conduct discovery not available in the arbitration forum."  *Nino*, 609 F.3d at 213 (quoting *Hoxworth*, 980 F.2d at 923).  Although the specific type of discovery conducted would likely not have been available in the arbitration forum—since discovery regarding class certification would not be a relevant issue in arbitration—such discovery regarding class certification is irrelevant in the arbitration forum, so LVNV did not use the Federal Rules to conduct discovery not otherwise available in the arbitration forum that would be helpful to it.  In other words, this is not a situation of gamesmanship that this factor appears to contemplate in which a party delays moving to compel arbitration in order to conduct discovery that would otherwise be unavailable to them to gain a tactical advantage in the arbitration.  However, the Court also notes that, if the class certification is irrelevant to the arbitration, then, although the Plaintiffs' are not at a tactical disadvantage because of the information contained in the discovery they

provided to LVNV, they nonetheless had to expend time and resources conducting discovery regarding class certification that was unnecessary. *See Gray Holdco*, 654 F.3d at 457 (recognizing that prejudice in the context of waiver includes "substantive legal prejudice and prejudice a party suffers due to the unnecessary delay and expense of having to litigate a case that an arbitrator later decides"). That being said, the vast majority of the litigation regarding class certification would have been required regardless of whether LVNV had moved to compel arbitration prior to discovery since discovery regarding class certification generally relevant to all the plaintiffs and not specific to the Howards. Thus, Plaintiffs, would likely have been required to expend a similar amount of time and resources without the Howards' involvement in the case.[8] Finally, there is some indication that, through discovery, Plaintiffs have discovered that the Howards may be the only named plaintiffs that will be part of the class if a class is certified. (ECF No. 55 at 12:23–13:9 (stating that the Howards are likely to be the only plaintiffs who would be part of the class)) Therefore, on the whole, this factor is either neutral or slightly favors LVNV.

### 7. *Hoxworth* Factors Combined

In sum, the Court finds that four of the *Hoxworth* factors weigh in favor of finding LVNV waived its right to arbitrate—two heavily in favor, one in favor, and one slightly in favor—one factor is either slightly in favor of waiver or is neutral, and one factor is neutral or slightly weighs in favor of finding that LVNV did not waive its right to arbitrate. In evaluating all of the factors, the Court finds that LVNV waived any right it had to compel arbitration regarding

---

[8] This, of course, does not consider any time or resources that the Howards themselves expended or discovery specifically related to the Howards and the Howards' bankruptcy and Vanessa Howard's account.

the Howards' claims by acting inconsistent with any right to compel arbitration and, thereby, causing prejudice to Plaintiffs. LVNV "delay[ed] its demand for arbitration" without explanation and "use[d] federal court proceedings to test the water before taking a swim." *Pharmacy Ben. Managers*, 700 F.3d at 122 (quoting *Gray Holdco*, 654 F.3d at 453). Although LVNV provides no reason for why it waited to seek arbitration, the reason is nonetheless clear from the timing of its motions: it "invoked the litigation machinery" in an attempt to have all of the claims by all of the plaintiffs dismissed in one fell swoop and, when that was not wholly successful, shifted strategies to go after the individual plaintiffs piece-meal. *Hoxworth*, 980 F.2d at 926 (citation omitted).

## VI. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' Motion to Compel Discovery and denies LVNV's Motion to Compel Arbitration.

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRAVIS HOWARD, VANESSA HOWARD, WILLIAM SIMMS, CHARLES NEFF, STACY ADAMS-NEFF, and GWEN SNYDER, *individually and on behalf of all others similarly situated,* | ) ) ) ) ) ) | Case No. 3:19-cv-93 |
| | ) | |
| Plaintiffs, | ) | **JUDGE KIM R. GIBSON** |
| v. | ) ) | |
| LVNV FUNDING, LLC, and RESURGENT CAPITAL SERVICES, LP, | ) ) ) | |
| Defendants. | ) ) | |

### ORDER

**AND NOW**, this ___4th___ day of December, 2020, upon consideration of Plaintiffs' Motion to Compel Discovery (ECF No. 39) and Defendants' Motion to Compel Arbitration (ECF No. 41), it is **HEREBY ORDERED** as follows:

1. Plaintiffs' Motion to Compel Discovery (ECF No. 39) is **GRANTED IN PART** and **DENIED IN PART**:

    a. The Court **GRANTS** Plaintiffs' motion to compel production regarding proofs of claim and, as more fully set out in the Memorandum Opinion, Defendants shall have ten days to provide notice of how they will comply with this Order.

    b. The Court **DENIES** Plaintiffs' motion to compel production of the purchase agreements.

2.   Defendants' Motion to Compel Arbitration (ECF No. 41) is **DENIED**.


**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**