IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRAVIS HOWARD and VANESSA HOWARD, individually and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES, LP,<br><br>Defendants. | 3:19-CV-00093-CCW |

**OPINION AND ORDER**

This case has been pending since June 2019 and was reassigned from the Honorable Kim R. Gibson to the undersigned in April 2025. ECF Nos. 1, 119. In March 2023, Judge Gibson certified the case as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, ECF No. 109, and then approved a plan for providing notice to the class members, ECF No. 113. Plaintiffs' counsel subsequently submitted a status report indicating that notice had been provided to the class. ECF No. 114. However, the status report also raised the issue of whether the Court could retain jurisdiction over this case in light of the United States Court of Appeals for the Third Circuit's decision on Article III standing in *Huber v. Simon's Agency, Inc.*, 84 F.4th 132 (3d Cir. 2023), which was decided after Judge Gibson certified the class in this case. *Id.* Plaintiffs requested that the Court set a briefing schedule on the issue of their standing. *Id.* Judge Gibson did so, ECF No. 115, and the parties fully briefed the issue, but Judge Gibson had not issued a decision as of the time the case was reassigned. ECF Nos. 116, 117, 118.

1

After the case was reassigned, the Court directed the parties to file a joint status report regarding proposed next steps in the case. ECF No. 121. In their status report, the parties advised that "the Court should resolve the standing issue before further steps are taken." ECF No. 124 at 2. Having considered the parties' briefing on the issue of Plaintiffs' standing and for the reasons discussed below, the Court concludes that named Plaintiffs Travis Howard and Vanessa Howard have not alleged an injury-in-fact sufficient to vest them with Article III standing. Accordingly, the Court will **DISMISS** this case **WITHOUT PREJUDICE**.

**I.      Factual Background**

This case involves claims for alleged violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and arises from a proof of claim ("POC") filed by Defendants LVNV Funding, LLC ("LVNV") and Resurgent Capital Services, LP, ("Resurgent") in the Howards' Chapter 13 bankruptcy case. ECF No. 97 ¶¶ 11–13, 45–49. The POC listed $309.36 as the amount of a debt owed by the Howards to Credit One Bank. *Id.* ¶¶ 14–15. According to the POC, the debt consisted entirely of principal and did not include any interest or fees. *Id.* ¶¶ 16–18. But according to the Howards, the POC was false, misleading, and/or deceptive because the reported amount of the debt actually included fees and interest, and therefore the POC overstated the debt's principal. *See id.* ¶¶ 21–23. The Howards allege that "by falsely stating no interest or fees were included in a proof of claim," LVNV and Resurgent violated 15 U.S.C. § 1692e and "denied Plaintiffs and the class members information Congress deemed material for purposes of bankruptcy proceedings, needlessly increased the burden and expense of Plaintiffs and the class members' bankruptcies, and created an undue burden for the court system." *Id.* ¶¶ 31, 33, 48.

The certified Rule 23 class consists of:

> All individuals who filed for bankruptcy in Pennsylvania, had Defendants file a proof of claim between June 6, 2018, to December 31, 2018, and had Defendants represent in the claim that the debt underlying the claim was composed entirely of principal, even though Defendants held an account statement, data string, or other document that showed the debt included interest and/or fees, in addition to principal.

ECF No. 109 at 20.

## II. Legal Standard

The standing doctrine, in Article III, section 2 of the Constitution, limits the judicial power of the United States to "Cases" and "Controversies." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). Thus, federal courts may "resolve only 'a real controversy with real impact on real persons.'" *TransUnion*, 594 U.S. at 424 (quoting *Am. Legion v. Am. Humanist Assn.*, 588 U.S. 29, 87 (2019)). A "real controversy" exists where the plaintiff (1) has suffered an "injury in fact," (2) that is "fairly traceable" to the defendant's challenged conduct, and (3) is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). If any of these elements is missing, then there is no case or controversy, and the court lacks jurisdiction over the matter. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560–62 (1992). "The party invoking federal jurisdiction bears the burden of establishing [Article III standing]." *Id.* at 561. And they must do so "with the manner and degree of evidence required at the successive stages of the litigation." *Id.*

"[F]ederal courts have an [independent] obligation to assure [them]selves of litigants' standing under Article III," and to raise the issue *sua sponte* if necessary. *Wayne Land & Min. Grp., LLC v. Delaware River Basin Comm'n*, 959 F.3d 569, 574 (3d Cir. 2020) (quotation omitted). In the context of a class action case, "the class's standing turns on the named plaintiffs' standing." *Lewis v. Gov't Emps. Ins. Co.*, 98 F.4th 452, 459 (3d Cir. 2024). Where the named plaintiff lacks standing, the case must be dismissed. *See id.* at 461.

3

Injury-in-fact is the "first and foremost of standing's three elements." *Spokeo*, 578 U.S. at 338 (cleaned up). To satisfy this element, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). An injury is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). And an injury is "concrete" if it is "real, and not abstract." *Id.* at 340 (internal quotation marks omitted). Importantly, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants [him] a statutory right and purports to authorize [him] to sue to vindicate that right." *Id.* at 341. Rather, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 414.

Both tangible and intangible injuries may support standing. On the one hand, "traditional tangible harms"—e.g., monetary loss, physical injury—"readily qualify as concrete injuries under Article III." *TransUnion*, 594 U.S. at 425. On the other, intangible harms qualify only in certain circumstances. *See id.* One way is if the intangible harm bears a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* Thus, a plaintiff may establish standing by identifying "a close historical or common-law analogue for their asserted injury," though they need not point to "an exact duplicate." *Id.* A plaintiff may also establish standing by asserting an "informational" harm, that is, by alleging that they "'failed to receive . . . information' to which [they were] legally entitled." *Kelly v. RealPage Inc.*, 47 F.4th 202, 211 (3d Cir. 2022) (quoting *TransUnion*, 594 U.S. at 441). But to assert a cognizable informational harm, a plaintiff must allege that the failure to receive information resulted in

4

"adverse effects or other downstream consequences, and such consequences have a nexus to the interest Congress sought to protect" in creating a right to the information. *Id.* at 214 (cleaned up).

### III. Discussion

In their briefing on standing, the Howards assert two theories of how they suffered an injury-in-fact. First, they argue that they have standing under the United States Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), because they suffered an injury "in precisely the form the [FDCPA] was intended to guard against." ECF No. 116 at 3 (citing *Havens*, 455 U.S. at 373–74). Second, they argue that they have standing because the POC misrepresented the principal amount of their debt, thereby inflicting a cognizable informational harm by "frustrat[ing] [their] ability to make informed decisions." *Id.* at 5. LVNV and Resurgent respond that the Howards do not have standing under *Havens* but concede that "if the balance listed in the POC was not comprised solely of principal," then the Howards "have standing at this stage of the litigation for their alleged 'informational harm.'" ECF No. 117 at 3–4. Thus, LVNV and Resurgent essentially take the position that whether the Howards have suffered an informational harm is intertwined with the merits of their claims. *Id.* For the reasons discussed below, the Court concludes that neither of the Howards' theories of injury-in-fact is sufficient to convey standing.

### A. The Court Declines to Extend *Havens* to the Instant Case

The Howards first argue that the United States Supreme Court's decision in *Havens* conclusively establishes their standing. ECF No. 116 at 3–4; ECF No. 118 at 1–2. In *Havens*, the Supreme Court considered whether a "tester" plaintiff had standing to assert a claim for a violation of § 804(d) of the federal Fair Housing Act ("FHA"). 455 U.S. at 373–74. That statute makes it "unlawful for an individual or firm . . . [t]o represent to *any person* because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such

5

dwelling is in fact so available." *Id.* at 373 (quoting 42 U.S.C. § 3604(d)). The plaintiff in *Havens*, who was African American, alleged that the defendant violated the FHA by falsely telling her "on four different occasions that apartments were not available . . . while informing white testers that apartments were available." *Id.* at 374. The Supreme Court held that the plaintiff had standing to sue for a violation of the FHA, even though she "may have approached the [defendant] fully expecting that [she] would receive false information, and without any intention of buying or renting a home." *Id.* As the Supreme Court explained, because the plaintiff had been "the object of a misrepresentation made unlawful under [the FHA]," she had "suffered injury in precisely the form the statute was intended to guard against, and therefore ha[d] standing to maintain a claim." *Id.* at 373–74.

The Howards argue that the same logic underlying *Havens* supports their standing because "a debtor 'who has been the object of a misrepresentation made unlawful under [the FDCPA] has suffered injury in precisely the form the [FDCPA] was intended to guard against." ECF No. 113 at 3 (quoting *Havens*, 455 U.S. at 373–74). LVNV and Resurgence respond that this theory of standing fails because it is in tension with more recent decisions from the Supreme Court and the Third Circuit. ECF No. 117 at 3–4. Ultimately, however, the Court need not resolve any such tension because *Havens* is distinguishable from the instant case and the Court will not extend its holding beyond its context.

*Havens* was a case brought under the FHA, not the FDCPA, and involved the type of false statement the FHA specifically made unlawful—a representation to the plaintiff, on account of her race, that housing was unavailable when in fact it was available. *Havens*, 455 U.S. at 373–74. While the Third Circuit has not spoken on *Havens*' applicability to FDCPA cases, other Circuits have distinguished *Havens* and declined to extend it to the FDCPA context. For example, in

6

rejecting the same theory of standing pressed by the Howards here, the Eleventh Circuit Court of Appeals correctly observed that "the [FHA] does not seek to vindicate some amorphous interest in receiving [truthful] information. Instead, it protects the weighty interest in not being subjected to racial discrimination, which can inflict a concrete injury on anyone who 'personally' experiences it." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1005 (11th Cir. 2020) (declining to apply *Havens* to a FDCPA case); *see also Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 338 (7th Cir. 2019) (Barrett, J.) (declining to apply *Havens* to a FDCPA case for the same reason as *Trichell*); *TransUnion*, 594 U.S. 413 at 426–27, 441–42 (citing *Trichell* and *Casillas* with approval). In other words, the injury suffered by the tester plaintiff in *Havens* "is obviously neither the harm [the Howards] claim[] nor the one that the [FDCPA] protects against," *Casillas*, 926 F.3d at 338, because—unlike the Howards—the plaintiff in *Havens* was not just given false information, but suffered a concrete injury in the form of racial discrimination prohibited by the FHA.[1] Thus, contrary to the Howards' contention, it is not clear that *Havens* "has direct application in this case." ECF No. 118 at 1 (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).

The Howards attempt to distinguish *Trichell* and *Casillas* by arguing that, unlike in this case, the defendants in *Trichell* and *Casillas* did not "provide[] false and inaccurate information" to plaintiffs, and therefore the plaintiffs' injuries in those cases "were not the types of injuries the FDCPA was intended to guard against." ECF No. 116 at 4. This argument is unconvincing. The FDCPA was enacted to guard against many kinds of "abusive debt collection practices by debt

---

[1] The Howards argue that the distinctions drawn between the FHA and FDCPA in *Trichell* and *Casillas* are "immaterial" because "*Havens* clearly stated that the tester plaintiff had standing because he suffered injury in precisely the form the FHA 'was intended to guard against,'" not because the FHA was an anti-discrimination statute. ECF No. 116 at 4 (quoting *Havens*, 455 U.S. at 373–74). But this ignores that the *Havens* court recognized that the FHA was intended to guard against "discriminatory [mis]representations," *Havens*, 455 U.S. at 374, which is not what "the [FDCPA] protects against," *Casillas*, 926 F.3d at 338.

7

collectors," 15 U.S.C. § 1692(e), and accordingly renders debt collectors liable for "fail[ing] to comply with *any* provision of" the FDCPA, 15 U.S.C. § 1692k(a) (emphasis added), including the provisions at issue in *Trichell* and *Casillas*. It would make little sense for the FDCPA to create liability for the violations alleged in *Trichell* and *Casillas* if it was not intended to guard against injuries caused by those violations.

In sum, the Howards have not established that *Havens* dictates the outcome in this case. And the Supreme Court itself has recently cautioned, albeit on the separate issue of organizational standing, that "*Havens* was an unusual case" and it "has been careful not to extend the *Havens* holding beyond its context." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 396 (2024). The Court will follow that example here and declines to extend *Havens* beyond its context to find that the Howards have Article III standing in this FDCPA case simply because the POC allegedly omitted the amount of the Howards' debt consisting of interest and fees.

B.   **The Howards Have Not Alleged a Plausible Informational Injury**

Regardless of whether they have standing under *Havens*, the Howards assert that they have suffered an informational injury sufficient to vest them with standing. Specifically, they argue that by providing "false and inaccurate information about their debt, and by failing to provide reliable and truthful information, Defendants subjected [them] to an unlawful collection practice and necessarily frustrated [their] ability to make informed decisions." ECF No. 116 at 5. Thus, the Howards claim they have standing because they "were denied information they were entitled to receive," and "that denial has a direct nexus to the purpose of the FDCPA." *Id.* For their part, LVNV and Resurgence concede that if "the balance listed in the POC did not consist solely of principal," then the Howards have sufficiently alleged an informational injury. ECF No. 117 at 2. In other words, LVNV and Resurgence contend that the Howards' standing depends on whether their claims have any merit at all, and if they do have merit, then the Howards also have standing.

8

*Id.* at 6. But this concession is premised on LVNV and Resurgence's belief that "where the defendant is legally required to provide certain information, its failure to do so, alone, confers standing." *Id.* at 4. That is incorrect. And applying the correct standard, the Court concludes that the Howards have not alleged a cognizable informational injury.

"A plaintiff asserting informational injury must show '(1) the omission of information to which [she] claim[s] entitlement, (2) adverse effects that flow from the omission, and (3) [a] nexus to the concrete interest Congress intended to protect' by requiring disclosure of the information." *George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226, 236 (3d Cir. 2024) (quoting *Kelly*, 47 F.4th at 214). While the parties in this case focus on the first and third elements, the second element is essential. Thus, in *George* the Third Circuit found no informational harm resulting from an omission in a collection letter[2] because "[n]othing in the complaint indicate[d] that [the plaintiff] could not pay her debt as a result of the letter, that the omission caused downstream financial consequences, or that [the plaintiff] suffered distress." *George*, 114 F.4th at 236. In contrast, in *Kelly* the Third Circuit found cognizable informational harms where the omission of information in the plaintiffs' credit reports[3] rendered them unable to correct errors in those credit reports, which in turn resulted in denial of plaintiffs' housing applications and emotional distress, among other consequences. *Kelly*, 47 F.4th at 214.

Here, even if the POC did omit the amount of the Howards' debt that consisted of interest and fees, the Howards have not identified any downstream consequence or adverse effect flowing from that omission. Rather, the only "adverse effect" cited by the Howards is that "by failing to

---

[2] The collection letter at issue in *George* allegedly omitted the identity of the creditor to whom the debt was owed. *George*, 114 F.4th at 230.

[3] In *Kelly*, the omitted information was the source material relied on in including erroneous disclosures in the plaintiffs' credit reports. *Kelly*, 47 F.4th at 208, 214.

9

provide reliable and truthful information, [LVNV and Resurgence] . . . necessarily frustrated Plaintiffs' ability to make informed decisions." ECF No. 116 at 5. But having their ability to make informed decisions generically "frustrated" is not enough to give the Howards standing. If it was, then *Kelly's* second prong would have little purpose because *every* omission of required information would be actionable. *Cf. George*, 114 F.4th at 236 n.12 (declining to infer adverse effects that would vitiate *Kelly*'s second prong). Furthermore, the Second Amended Complaint alleges no downstream consequence or adverse effect flowing from the alleged omission of information in the POC. *See generally* ECF No. 97. Instead, it alleges simply that the Howards were "denied [] the information necessary to evaluate Defendants' proof of claim filings." *Id.* ¶ 31. The only other allegation in the Second Amended Complaint that suggests a downstream consequence to the Howards is that the omission in the POC "needlessly increased the burden and expense of Plaintiffs and the class members' bankruptcies." *Id.* ¶ 33. But this allegation is conclusory and fails to establish the Howards' standing. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 285 (3d Cir. 2018) ("[A] plaintiff must do more than offer conclusory assertions of economic injury in order to establish standing. She must allege facts that would permit a factfinder to value the purported injury at something more than zero dollars without resorting to mere conjecture.").

At bottom, the Howards argue that they "have standing simply because they allege that they received false and inaccurate information." ECF No. 118 at 3. That argument is incorrect under the law of this Circuit. Accordingly, the Howards have failed to establish an informational injury sufficient to convey Article III standing.[4]

---

[4] Even if the Howards had asserted a "traditional injury" theory of harm, they would still lack standing because they have only asserted the "mere receipt of a misleading statement." *George*, 114 F.4th at 236–37.

## IV. Conclusion

For all of the foregoing reasons, the Court concludes that the Howards lack standing and therefore the Court lacks subject matter jurisdiction over this case. Accordingly, it is **HEREBY ORDERED** that this case is **DISMISSED WITHOUT PREJUDICE**. *See Potter v. Cozen & O'Connor*, 46 F.4th 148, 154 (3d Cir. 2022) (stating that Article III standing is jurisdictional); *Onyiuke v. New Jersey*, 242 F. App'x 794, 797 (3d Cir. 2007) (citing *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997) ("[A] dismissal of an action for lack of subject matter jurisdiction is not a decision on the merits; therefore such a dismissal should be without prejudice.").

DATED this 29th day of May, 2025.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record